UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EARVIN EALY,

      Plaintiff,

v.                                  Case No.: 5:12cv205/MP/CJK

GEO GROUP, INC., et al.,

      Defendants.

_____/

ORDER and
<u>REPORT AND RECOMMENDATION</u>

      This cause is before the court upon defendants' motion to dismiss the second amended complaint (doc. 41).  Plaintiff has responded in opposition (doc. 46) and defendants have replied to that response (doc. 52).  Plaintiff also has filed a motion to amend his second amended complaint (doc. 53), to which the defendants have responded in opposition (doc. 54), and plaintiff has replied to that response (doc. 59).

BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff, an inmate of the Florida Department of Corrections ("DOC") proceeding *in forma pauperis*, was confined at Graceville Correctional Facility ("Graceville CF") during the events set out in the complaint.  Plaintiff names six defendants: DOC, Graceville CF Warden Mark Henry, Classification Supervisor Carrie McGinty, Health Services Administrator Denise Payne, Nurse Gayle Womble, and Geo Group, Inc. ("Geo Group").  (Doc. 34, pp. 2-3).  Plaintiff avers that DOC contracted with defendant Geo Group for "the provision of medical, health, and other

peneological [sic] services at" Graceville CF.  (Doc. 34, p. 2).  In August 2007, plaintiff was taken into the "custody and control" of the DOC.  During intake, DOC personnel determined that plaintiff was "legally blind and would require accommodation within prison based on his condition."  Plaintiff was "to receive the assistance of 'Inmate Assistants'" who would aid plaintiff with his daily life.  On or about November 2007, plaintiff was transferred to Graceville CF.  Plaintiff claims he was to be assigned a primary aide to assist him with his daily living activities and a secondary aide to assist him in the event the primary aid was unavailable.

On July 2, 2008, plaintiff and his primary aide were separated and placed into two different jail cells because of inmate "reorganization" at Graceville CF.  Plaintiff claims that, for the subsequent seven days, he attempted to notify defendants Geo Group, Henry, McGinty, and Payne of the separation from his aide and inability to perform his "necessary daily living functions."  During this time, plaintiff claims he injured himself twice, including an injury to his hand.  On or about July 24, 2008, plaintiff filed inmate grievance #08-07-159-155.  In that grievance, plaintiff complained that he was legally blind and separated from his aide and that Graceville CF had been made aware of this problem on several previous occasions.  On September 9, 2008, plaintiff's grievance was approved and his inmate aide was transferred back into plaintiff's cell.  Plaintiff claims that he suffered various injuries while separated from his aide.  On or about May 15, 2009, plaintiff filed another grievance requesting that he be assigned a secondary aide.  Geo Group denied plaintiff's request.  In June 2009, plaintiff sent defendant Henry several e-mails requesting assignment of a secondary aide because the primary aide often was unavailable with other obligations.  Plaintiff also informed defendants McGinty and

Payne of the situation.  Plaintiff contends that based on these communications Geo Group "had knowledge" that plaintiff was experiencing hardships and required a secondary aide.  On or about June 16, 2009, plaintiff informed defendant Womble that he did not have an assigned secondary aide.  Plaintiff also avers that James Nethery, an inmate at Graceville CF who was willing to serve as plaintiff's secondary aide, was told by defendant McGinty that he would be placed into confinement if he "did not sign a document stating his refusal to be Plaintiff's aide."

Later, on or about June 17, 2009, plaintiff filed grievance #09-06-159-121, which stated that plaintiff spoke with defendant Womble who denied plaintiff's request for a secondary aide.  In a response to the grievance, plaintiff was told that he did not require a secondary aide.  One month later, on or about July 13, 2009, plaintiff filed another grievance, #09-07-159-091, again requesting a secondary aide.  Plaintiff received a response to his grievance which indicated that he would be assigned a secondary aide.  That same day, plaintiff filed an additional grievance requesting James Nethery be designated as his secondary aide.  Plaintiff's second grievance was denied because Graceville CF's staff were "not authorized to do any moving" and plaintiff would "need to select someone in his quad."

On or about August 11, 2009, plaintiff filed another grievance requesting that James Nethery be designated as plaintiff's aide.  Plaintiff received a response which stated that all moves pertaining to an aide "must go through the classification department."  On August 12, 2009, plaintiff filed yet another grievance requesting James Nethery as his aide.  Again, plaintiff received a response which stated "[n]o dorm changes at this time."  On or about August 22, 2009, plaintiff's primary aide was unavailable.  Plaintiff argues that because he lacked a secondary aide, he fell and

injured his left wrist, thumb, and "fourth finger."  He then tried to seek medical assistance from defendants Womble and Payne on August 26, 2009, but "was told to leave and was not provided treatment."

Plaintiff filed another grievance on August 27, 2009, requesting that Lonnie Ramey be designated as his aide.  Plaintiff received a response stating, "[w]e will not move anyone."  Plaintiff filed numerous grievances over the next several months concerning his lack of a secondary aide.[1]  During November 2009, plaintiff's primary aide was unavailable and plaintiff fell and injured his right thumb and middle finger. On November 24, 2009, plaintiff received a hand x-ray, which diagnosed his injuries. On January 19, 2010, after filing several grievances concerning the assignment of a secondary aide, plaintiff received a response from defendant Henry indicating that his request for a secondary aide had been approved.  Plaintiff alleges that the secondary aide was never provided and that, in April 2010, he fell again and damaged his front teeth.  Plaintiff was denied "emergency" medical treatment and told that he could receive "emergency care" only if he was bleeding or could not breathe.

Following the April incident, plaintiff again filed grievances concerning his lack of a secondary inmate aide and requested that a specific inmate, Robert Brown, be designated to serve in that regard.[2]  On May 6, 2010, plaintiff filed a grievance requesting medical attention for his hand.  Plaintiff described his hand injuries stemming from his 2008 fall as "severe" and characterized his right hand as "unuseable."  Plaintiff then requested to see an outside bone and joint specialist.  In

---

[1] The dates of the grievances are September 2, 2009, November 3, 2009, December 21, 2009, December 24, 2009, and January 7, 2010.

[2] The dates of these subsequent grievances are April 21, 2010, June 10, 2010, July 29, 2010, and August 1, 2010.

sum, plaintiff claims that between July 2008 and August 2010, he "was without the assistance of a secondary aide for extended periods, if at all." Owing to defendants' conduct, plaintiff says he fell on several occasions–July 2008, August 2009, November 2009, and April 2010–and suffered "permanent injury, disfigurement, and pain . . . ."

As a result of the foregoing allegations, plaintiff claims: deliberate indifference against defendants Geo Group, Henry, Payne, McGinty, and Womble (Count 1); violations of the Americans with Disabilities Act ("ADA") against DOC (Count 2); violations of section 504 of the Rehabilitation Act ("RA") against DOC (Count 3); negligence against Geo Group (Count 4); and negligence *per se* against Geo Group (Count 5).[3] (Doc. 34, pp. 12-20). As recompense, plaintiff seeks equitable relief, damages, costs, attorney's fees, interest, and any other relief as is just and proper. (Doc. 34, p. 21).

<u>MOTION TO AMEND</u>

The undersigned will first address plaintiff's motion to amend because leave to amend would moot the motion to dismiss. Plaintiff seeks to amend his complaint to substitute Geo Group as the defendant in Counts 2 and 3 and to re-assert previous claims accruing from his 2009 injuries. Plaintiff requests an opportunity to amend his complaint because of a recently obtained affidavit from an inmate, Michael Donald Wiggins, who was assigned as plaintiff's "impaired aide assistant" from January 2008 through September 2011.[4] (Doc. 53-1, p. 2). In the affidavit, Wiggins

---

[3] The court recognizes that, in his proposed third amended complaint, plaintiff has removed DOC as a defendant and included GEO Group in Counts 2 and 3.

[4] In his first amended complaint, plaintiff included only claims concerning his 2009 injuries. (Doc. 15). Plaintiff dismissed the claims concerning his 2009 injuries in his second amended

avers that "on several occasions" plaintiff asked Wiggins to file grievances for him. (Doc. 53-1, p. 2). Wiggins claims that Bobbie Lee and Nurse Womble, both staff at Graceville CF, threatened him and told him that if he filed grievances related to plaintiff's 2009 injuries, "bad things could happen to [him]." As a result, Wiggins would write the grievances "but not mail them or just throw them away." Defendants oppose the motion to amend arguing that amendment would be futile. (Doc. 54).

As a general matter, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend is futile "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendants." *Cockrell v. Sparks*, 501 F.3d 1307, 1310 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999)).

Defendants raise several arguments in support of their position that amendment would be futile, some of which are invariably intertwined with the pending motion to dismiss. As to plaintiff's claims that Geo Group is liable under the RA and ADA, such claims are either not cognizable against defendant Geo Group or are barred by the applicable statute of limitations. As to the ADA claims, only a public entity can be liable for the specified ADA violations. *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). Because Geo

---

complaint (doc. 34) because such claims were not exhausted under the Prison Litigation Reform Act ("PLRA"). (Doc. 33, p. 2).

Group is not a public entity, it is not subject to the ADA. *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) ("Since GEO is such a private corporation, we hold that GEO is not a public entity subjecting it to liability under Title II of the ADA . . . ."). The RA, however, has a broader application and applies to "recipients of federal funding, including private organizations." *Barnes v. Gorman*, 536 U.S. 181 (2002). Given plaintiff's averments that Geo Group receives federal funds, the RA applies to Geo Group at this stage in the proceedings.[5]

Because the RA "does not contain a statute of limitations period," this court must look to Florida law for the "most analogous state statute of limitations." *Everett v. Cobb County School Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)). The parties differ as to the applicable statute of limitations. Defendants claim that Florida Statutes section 95.11(5)(g) (2013) is the most analogous statute. *See* § 95.11(5)(g), Fla. Stat. (2013) (limiting actions "brought by or on behalf of a prisoner . . . relating to the conditions of the prisoner's confinement" to a one year statute of limitations period). Contrariwise, plaintiff urges that Florida Statutes section 768.28(14) (2012) is most similar because Geo Group is an instrumentality of the State of Florida and, therefore, Florida's sovereign immunity statute applies. *See* § 768.28(14), Fla. Stat. (2012) ("Every claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omissions pursuant to this section shall be forever barred unless . . . commenced . . . within 4 years . . . .").

---

[5] Defendants argue that plaintiff has not pled that Geo Group receives federal funding. In turn, plaintiff notes that the third amended complaint alleges that Geo Group "has received federal financial assistance with respect to incarceration of inmates and provision of peneological [sic] services." (Doc. 53-2, p. 17).

Previously, the Eleventh Circuit, relying on *Nicarry v. Enslinger*, 990 So. 2d 661, 663 (Fla. 5th DCA 2008), determined that section 95.11(5)(g)'s one year statute of limitations applied to a prisoner's § 1983 suit against a county sheriff and detention deputies for negligence, assault, and battery claims stemming from the conditions of his confinement. *See Rogers v. Judd*, 389 F. App'x 983, 988 (11th Cir. 2010). Florida's Fifth District Court of Appeals limited the holding of *Nicarry* and applied section 768.28(14)'s four year statute of limitations to a prisoner's claim for negligence against the Sheriff of Hernando County in his official capacity. *Calhoun v. Nienhuis*, 110 So. 3d 24 (Fla. 5th DCA 2013). In reaching such a conclusion, the Fifth District considered section 95.11(g)'s application to the prisoner's negligence claim and determined that section 768.28(14), part of Florida's limited waiver of sovereign immunity, was the applicable statute. *Calhoun*, 110 So. 3d at 26-27.

Defendants attempt to distinguish *Calhoun*, arguing that Geo Group is not subject to section 768.28(14) because it is a private prison and therefore not entitled to sovereign immunity. (Doc. 52). In support of this contention, defendants point to Florida Statutes section 957.05 (1996), which addresses the "[r]equirements for contractors operating private correctional facilities," and in relevant part states:

> Each contractor entering into a contract under this chapter is liable in tort with respect to the care and custody of inmates under its supervision and for any breach of contract. <u>Sovereign immunity may not be raised by a contractor, or the insurer of that contractor on the contractor's behalf, as a defense in any action arising out of the performance of any contract entered into under this chapter or as a defense in tort, or any other application, with respect to the care and custody of inmates under the contractor's supervision and for any breach of contract.</u>

§ 957.05(1), Fla. Stat. (1996) (emphasis added).

In turn, plaintiff responds that section 768.28(14) applies to "the state or one of its agencies or subdivisions," which the statute defines as including "executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including . . . corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority." § 768.28(2), Fla. Stat. (2012).  Under Florida law, a "key factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-to-day operations of the corporation." *UCF Athletics Ass'n Inc. v. Plancher*, 121 So. 3d 1097, 1106 (Fla. 5th DCA 2013); *see also Shands Teaching Hosp. & Clinics, Inc. v. Lee By and Through Lee*, 478 So. 2d 77, 79 (Fla. 1st DCA 1985) (focusing on the whether a corporation's "day-to-day operations are . . . under direct state control.").  State control, however, must be "something more than the sort of control that is exercised by the government in its regulatory capacity" and should be derived from something more than a "simple contractual arrangement." *Id*. at 1107.  Florida courts have construed the phrase "corporations primarily acting as instrumentalities or agencies of the state" broadly and held that the term encompasses a wide variety of corporations and institutions.  *See, e.g., Keck v. Eminisor*, 104 So. 3d 359 (Fla. 2012) (holding that a private corporation, Jacksonville Transit Management Corporation ("JTM"), was a state agency or subdivision entitled to sovereign immunity "because it primarily acts as an instrumentality of another state agency"); *Prison Rehab. Indus. v. Betterson*, 648 So. 2d 778 (Fla. 1st DCA 1994) (finding that Prison Rehabilitative Industries and Diversified Enterprises, Inc. ("PRIDE") was an instrumentality of the state because "a statutory scheme governing

PRIDE . . . contained numerous provisions for extensive governmental control over PRIDE's day-to-day operations").  Defendants reply that even if Geo Group is subject to section 768.28(14), plaintiff has not complied with the requisite notice provisions under section 768.28(6)(a).

Because section 957.05(1) prohibits private correctional facilities from claiming sovereign immunity from tort actions, Geo Group is not entitled to raise sovereign immunity under § 768.28 as a defense in this matter.  Instead, section 95.11(5)(g), which addresses suits concerning a prisoner's confinement, is the most analogous statute.  As such, plaintiff's claims "relating to the conditions of . . . [his] confinement" are subject to a one year statute of limitations.  § 95.11(5)(g), Fla. Stat. (2013).  Consequently, plaintiff's claims concerning injuries that happened in 2009 are time barred and re-introduction of those claims through amendment would be futile.[6]

Failure to Properly Exhaust Administrative Remedies

Plaintiff further moves to amend his complaint to reintroduce claims

---

[6] Assuming, *arguendo*, that Geo Group is an instrumentality of the state entitled to sovereign immunity, plaintiff has not complied with the three-year notice requirement necessary under section 768.28(6)(a).  *See* § 768.28(6), Fla. Stat. (2012) ("An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and . . . the Department of Financial Services, within 3 years after such claim accrues . . . .").  Under section 768.28, notice is a mandatory precondition for suit.  *See Wagatha v. City of Satellite Beach*, 865 So. 2d 620, 622 (Fla. 5th DCA 2004) ("'Under section 768.28(6), not only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of such notice . . . . Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.'" (quoting *Menendez v. North Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988))).  If Geo Group were an instrumentality of the state, plaintiff was required to give proper notice of the suit to the requisite state agency within three years.  Plaintiff does not claim that he gave notice or made any effort to do so.  As a result, plaintiff's 2008, 2009, and 2010 claims would also be time barred under this alternative theory.

concerning 2009 injuries that plaintiff originally believed he failed to grieve. Plaintiff's inmate aide, Michael Donald Wiggins, avers that plaintiff "on several occasions" asked Wiggins to file grievances for him, but that he did not because he was threatened by Geo Group employees.   Defendants contest plaintiff's interpretation of events and argue that plaintiff had the ability to file grievances and was not deterred from such action.  (Doc. 54).

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The court held that the defense of failure to exhaust should be treated as a matter in abatement.  *Id*. at 1374.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).  When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs, "which permits courts to hear evidence outside of the record on affidavits submitted by the parties."  *Bryant*, 530 F.3d at 1377 n.16.

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps.  *Turner*, 541 F.3d at 1082.  First, the court looks to the factual allegations in the defendants' motion and the plaintiff's response.  *Id*.  If they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative

remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.  If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*.  Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524, 122 S. Ct. 983.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *Booth, supra* at 734, 121 S. Ct. at 1825.  The requirement is not subject to waiver by a court, or to

futility or inadequacy exceptions.  *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).   Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387-88, 165 L. Ed. 2d 368 (2006); *see also id.*, 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit.  *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

Plaintiff admits that he failed to properly exhaust his grievances concerning the August and November 2009 injuries, but argues that his aide did not report these grievances because of fear of retaliation from Geo Group employees.  To show that a prison official's "serious threats of substantial retaliation against an inmate for lodging or pursuing . . . a grievance make the administrative remedy 'unavailable,'" an inmate must show:  "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."  *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).  Though Wiggins claims he was threatened not to file grievances on plaintiff's behalf,

the record and complaint indicate that numerous grievances were filed by plaintiff throughout 2009.  (Doc. 34, pp. 5-9).  In fact, plaintiff filed as many as fourteen grievances between August 1, 2009 and January 31, 2010.  (Doc. 54-1).  Moreover, defendants note that plaintiff filed seven grievances within twenty days[7] of his August 22, 2009 fall and also filed grievances in November and December 2009 (after the November 2009 injuries).  (Doc. 54, p. 6).  While some of these grievances took issue with the medical care plaintiff received, they did not mention plaintiff's injuries or threats of retaliation by staff.  (Doc. 54-2). Importantly, while Wiggins claims that Nurse Womble threatened him and warned him against filing grievances on plaintiff's behalf, plaintiff filed several grievances in late 2009, one of which actually labeled Nurse Womble as "incompetent."  (Doc. 54-2, p. 11).  Only a few months after these injuries (and after Wiggins allegedly was threatened concerning filing grievances), plaintiff filed grievances on the April 2010 injuries.  Plaintiff's frequent filing of a wide assortment of grievances demonstrates plaintiff (or whoever assisted him) was not threatened or intimidated at all.  *See Dimanche v. Brown*, 4:11cv533-SPM/CAS, 2012 WL 2053699, at *4 (N.D. Fla. May 21, 2012) *report and recommendation adopted*, 4:11-CV-533-SPM/CAS, 2012 WL 2053696 (N.D. Fla. June 7, 2012) ("[T]he fact that Plaintiff filed 12 grievances indicates that Plaintiff was not so threatened as he initially claimed. Courts have permitted a claim to proceed finding that the prisoner could not exhaust administrative remedies because they were 'unavailable' . . . . Plaintiff cannot show unavailability because he was not deterred and filed 12 grievances.").

---

[7] Defendants posit that twenty days is the "filing window" to grieve injuries.  (Doc. 54, p. 6).

Moreover, Plaintiff has not adequately explained why he did not bypass the staff members at Graceville CF and file a grievance directly with the Warden or DOC. *See Staley v. Tucker*, 5:13-CV-25-RS-EMT, 2014 WL 752420, at *4 (N.D. Fla. Feb. 25, 2014) (finding that even if an officer's threats "would deter a similarly situated inmate of ordinary firmness from filing a grievance . . . it would not deter an inmate from bypassing [prison] officials altogether and submitting a direct appeal to individuals in positions of greater authority within the FDOC system"). Instead, plaintiff pleads only that Nurse Womble and Bobbie Lee told Wiggins that "bad things could happen to [him]." (Doc. 53-1). Such threats are vague and isolated to two individuals, one of whom plaintiff continued to grieve and even classified as "incompetent." Given the foregoing considerations, plaintiff has not demonstrated he was deterred from filing grievances or that such threats "would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085. As a result, plaintiff has failed to exhaust his administrative remedies concerning the 2009 injuries. Because plaintiff seeks to amend his complaint to introduce claims that are subject to dismissal, amendment would be futile and leave is denied.

<u>MOTION TO DISMISS</u>

In ruling on a motion to dismiss for failure to state a claim, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged . . . in the complaint as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Nonetheless, conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not insulate a

complaint from dismissal.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Sinaltrainal*, 578 F.3d at 1260; *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Further, the complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  "A complaint is also subject to dismissal under [Federal Rule of Civil Procedure] . . . 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6).").

Plaintiff raises five causes of action in the second amended complaint: deliberate indifference against defendants Geo Group, Henry, Payne, McGinty, and Womble (Count 1); violation of the ADA against DOC (Count 2); violation of section 504 of the RA against defendant DOC (Count 3); negligence against defendant Geo Group (Count 4); and negligence *per se* against defendant Geo Group (Count 5). Defendants move for dismissal of plaintiff's deliberate indifference claim, as well as the negligence and negligence *per se* claims against Geo Group (Counts 1, 2, 5).

Negligence Claims

Defendants argue that plaintiff's claims for negligence and negligence *per se* (Counts 4 and 5) are subject to dismissal because the conduct underlying such claims is time-barred.  (Doc. 41, p. 4).  As discussed herein, plaintiff's state law tort claims

are subject to a one year statute of limitations.  *See* § 95.11(5)(g), Fla. Stat. (2013) (limiting actions "brought by or on behalf of a prisoner . . . relating to the conditions of the prisoner's confinement" to a one year statute of limitations period).  Plaintiff's claims stem from incidents that occurred in 2008, 2009, and 2010.  Plaintiff filed his original complaint on June 27, 2012.  Because all of plaintiff's tort claims take issue with conduct that occurred prior to June 27, 2011, such claims are time-barred.  Accordingly, counts four and five of plaintiff's complaint should be dismissed.

<u>Eighth Amendment Claims</u>

In contrast to plaintiff's state law negligence claims, a § 1983 action is governed by the forum state's general personal injury statute of limitations.  *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007) (*citing Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)).  Florida observes a four year personal injury statute of limitations.  *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996); Fla. Stat. § 95.11(3).  Although the <u>length</u> of the statute of limitations is resolved by reference to state law, the <u>accrual date</u> of a § 1983 action is governed by federal law.  *Wallace v. Kato*, 549 U.S. at 388, 127 S. Ct. at 1095.  Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know "(1) that [he] ha[s] suffered the injury that forms the basis of [his] complaint and (2) who has inflicted the injury."  *Chappell*, 340 F.3d at; *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (holding that the limitations period begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights").

Defendants move to dismiss plaintiff's complaint on two grounds: plaintiff's 2008 claims are statutorily time-barred, and the 2008 and 2010 claims do not, as a matter of law, evidence an Eighth Amendment violation by the defendants. (Doc. 41). The court will first consider whether defendants' alleged conduct constituted deliberate indifference.

"To show a violation of [his] Eighth Amendment rights, plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005 (quotation omitted). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1319-20 (quotations omitted). Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). Some of the ways in which prison officials might avoid Eighth Amendment liability include showing (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must establish three elements. First, the plaintiff must demonstrate "an

objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted). The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). Deliberate indifference is established only when the plaintiff demonstrates that the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion)

("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").  Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim.  *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[8]  In order to satisfy the final element of an Eighth Amendment claim, a plaintiff must show that the official's deliberate indifference caused his injury.  *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Delay in providing "diagnostic care and medical treatment known to be necessary" can qualify as deliberate indifference.  *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").  That delay, however, must be "tantamount to unnecessary and wanton infliction of pain," and "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).  The Eleventh Circuit has found cognizable deliberate indifference claims where prison officials delayed treatment for life-threatening emergencies and in "situations where it is apparent that delay would detrimentally exacerbate the medical problem."  *Hill* at 1187.  "[D]elay

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id*. at 1187-88.

Here, as to plaintiff's 2008 injury, plaintiff admits that Geo Group assigned him a primary aide "to assist him with his daily living functions."  On July 2, 2008, plaintiff and his aide were assigned to "separate cells through reorganization of inmates within GCF."  Plaintiff claims he attempted to notify defendants Geo Group, Henry, McGinty, and Payne that his aide had been transferred to a separate cell.  As a result of not having his aide, plaintiff fell twice and injured his hand.  Plaintiff subsequently filed a grievance on July 24, 2008, in which he complained that his inmate aide had been transferred to another cell.  On September 9, 2008, plaintiff's grievance was approved and his inmate aide was transferred back into his cell.  Based on the foregoing allegations, plaintiff cannot show that the defendants acted with deliberate indifference.  Absent from plaintiff's complaint are allegations that the defendants separated plaintiff from his aide and did so with the requisite intent necessary to support a claim for deliberate indifference.  Although plaintiff avers that he attempted to notify the defendants, the success of these informal notification attempts is unknown and does not indicate that defendants' conduct was deliberately indifferent to plaintiff's condition.  Moreover, plaintiff did not file a grievance through Graceville CF's established formal notification process for several weeks after he was separated from his aide.  Prior to filing the grievance, plaintiff fell and injured himself.  Nothing in plaintiff's complaint shows that the defendants acted with "a 'sufficiently culpable state of mind'" or that their actions deprived plaintiff of "'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834.  Instead, plaintiff's complaint evidences that the defendants provided plaintiff with an inmate aide, and

after the aide was placed in another cell, transferred the aide back into plaintiff's cell.

Plaintiff's 2010 claims are even more tenuous.  Plaintiff again admits he was assigned a primary aide, as well as a secondary aide "for over a year," but takes issue with the lack of an assigned secondary inmate aide during certain periods when the primary aide was temporarily unavailable .  On April 21, 2010, plaintiff attempted to get to the barbershop without an aide's assistance and fell and injured himself. Plaintiff filed several grievances with Graceville CF alerting them to his lack of a secondary inmate aide.  Plaintiff bases his deliberate indifference claims on the lack of an inmate aide at all times, including during the night.  Accordingly, such claims posit that a 24/7 aide would be a constitutional prerequisite, required by the Eighth Amendment.  These claims do not rise to the level of deliberate indifference on the part of the defendants.  Even fairly construing plaintiff's blindness as a medical need, defendants' responses in 2008 and 2010 have neither been so inadequate as to "constitute an unnecessary and wanton infliction of pain" nor shown "a subjective intent . . . to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258 (noting that deliberate indifference is not established through "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law").  In short, plaintiff takes issue with the adequacy of the palliative care provided for his blindness, which traditionally is not cognizable as an Eighth Amendment violation.  *See Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033.  Plaintiff was provided an inmate aide.  Because plaintiff did not have a secondary aide present at all possible moments does not establish a

claim for deliberate indifference against the defendants.[9]  *See Woody*, 401 F. App'x. at 512 ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").

As to his claimed physical injuries, plaintiff does not plead facts indicating deprivation of medical care for the 2008 injuries.  For his 2010 injuries, plaintiff says he fell and injured his teeth and declared a medical emergency.  Plaintiff was told by defendants Womble and Payne that he could not receive emergency care "unless he was bleeding or could not breathe."  He also was told that they would not treat his tooth injury.  Defendants Womble and Payne's response to plaintiff's teeth injuries indicates that they considered the injuries and did not conclude that they merited medical attention, much less "emergency" medical attention.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (noting, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment").  Plaintiff also does not plead that defendants' conduct made the injuries to his teeth any worse.  Additionally, plaintiff says little concerning

---

[9] Plaintiff's complaint also indicates that Geo Group approved plaintiff's requests for a secondary aide, but was unwilling to reorganize inmates so plaintiff could have a secondary aide of his choice. Instead, Geo Group appears to have required plaintiff to choose an inmate in his own dormitory to serve as his secondary inmate aide.  As gleaned from the complaint, plaintiff refused and continued to request that certain inmates be assigned as his secondary aide.

the medical care he received in 2008 or 2010 pertaining to his hand injury, other than that he filed a grievance in 2010 which stated that he was still having problems with his hand and requested to see a "bone/joint" specialist.  Plaintiff's pleadings do not evidence that a defendant acted with deliberate indifference in treating his hand injury.  Consequently, plaintiff has not shown that medical treatment of his injuries "constitute[d] an unnecessary and wanton infliction of pain" rather than "mere[] accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258.

<u>Supervisory Liability</u>

Plaintiff also seeks to hold Geo Group liable in its supervisory capacity.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk Cnty. v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 (1979).  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), set forth the limited circumstances in which a causal connection can be

shown sufficient to render a supervisor liable on a § 1983 claim.   The causal connection can be established:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)). Plaintiff seeks to establish this causal connection by claiming that Geo Group failed to adopt a policy or enforced an improper policy that resulted in a violation of plaintiff's constitutional rights, and also failed to adequately hire, train, staff, and implement supervisory procedures that would allow proper identification and treatment of someone with plaintiff's medical condition.   As discussed above, and dispositive of the claim, plaintiff has not shown that the defendants were deliberately indifferent.   Moreover, defendants provided plaintiff not only with a primary aide but also with a secondary aide.   When plaintiff properly grieved the loss of his primary aide, Geo Group arranged for plaintiff's aide to be placed in plaintiff's cell. Assuming, *arguendo*, that plaintiff was able to show that deprivation of an inmate aide amounted to more than negligence on the defendants' part, plaintiff has not shown that defendants' conduct was other than an isolated incident.   *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the [institution].").

Remaining Claims Against DOC

The remaining claims in plaintiff's second amended complaint–violations of the RA and ADA (Counts 2 and 3)–against defendant DOC also must be dismissed. As discussed in  reference to plaintiff's motion to amend, plaintiff's claims under the RA and ADA are  subject to a one year statute of limitations under § 95.11(5)(g) and are time-barred.  Further, defendant DOC has not been served within the requisite 120- day time limit as provided under Rule 4 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 4(m).  Accordingly, the claims against defendant DOC should be dismissed.

Accordingly, it is ORDERED:

Plaintiff's motion to amend (doc. 53) is DENIED.

And it is respectfully RECOMMENDED:

1.   That defendants' motion to dismiss (doc. 41) be GRANTED.

2.   That this cause be DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

3.   That the clerk be directed to close the file.

DONE AND ORDERED this 23rd day of June, 2014.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).